SWEENEY *v.* JORDAN.

1. CONTRACTS—MEETING OF MINDS—QUESTION FOR JURY.
   In an action upon an oral contract for dredging land, where defendant claimed that there was no such meeting of minds as is essential to a valid contract, the question was properly submitted to the jury.

2. EVIDENCE—CORRESPONDENCE—SELF-SERVING—HEARSAY.
   Letters passing between defendant and a bank were properly excluded; defendant's being self-serving, and the bank's hearsay.

Error to Luce; Fead (Louis H.), J. Submitted April 25, 1923. (Docket No. 81.) Decided June 4, 1923.

Assumpsit by Carlton H. Sweeney against William G. Jordan on a dredging contract. Judgment for plaintiff. Defendant brings error. Affirmed.

*Davidson & Hudson,* for appellant.

*McDonald & Kaltz* and *A. L. Sayles,* for appellee.

FELLOWS, J. Plaintiff is a dredging contractor. Defendant owns 1,500 acres of low lands along the Hendrie river in Luce county. The Hendrie flows into the Taquamenon. Plaintiff had been doing some dredging for one McLeod to facilitate floating logs to the railroad. In November, 1920, plaintiff had completed his job for McLeod and his dredge was near Soo Junction. It is the claim of plaintiff that McLeod desired to continue the dredging to the Taquamenon and offered to pay as his share $5,000; this amount being insufficient to pay the cost of the work, plaintiff

sought to interest other large landowners of low-lands in the enterprise, and finally did succeed in interesting such others including defendant; that the ditch was constructed and under the contract he claims he had with defendant and which we shall presently consider more in detail, he has earned the price agreed upon and is entitled to recover. Defendant denied any contract relations with plaintiff. The trial judge submitted the case to the jury as one of fact pure and simple, and plaintiff had verdict and judgment.

The main contention of defendant in this court is that the testimony of the plaintiff upon direct-examination was so at variance with that given upon cross-examination as to make it a matter of pure conjecture whether an agreement was in fact entered into and that, taking the testimony as a whole, it is satisfying that there was not such meeting of the minds as is essential to a valid contract. We have read this record with care and have re-read plaintiff's testimony, having in mind defendant's position, but are unable to follow his contention. It is true that an excerpt here and there may appear to be at variance with another excerpt, but the testimony of the plaintiff on both direct and cross-examination very consistently, we think, adheres to his claim that a contract was made and what the contract was. It becomes necessary to more fully detail the transaction and the claims of the parties. The large landowners along the Hendrie who would be interested in the project in addition to Mr. McLeod were: the Northern Michigan Land Company, J. J. Hicks, the State Bank of Chicago, A. G. Whitney, the Minnesota Land & Credit Company, and defendant Jordan. Plaintiff's plan contemplated interesting all these parties in the project, the payment by each of the interested parties of such a *pro rata* share as, with the $5,000 to be

paid by McLeod, would pay for the construction and give him a profit.     He had a preliminary talk with defendant in which he estimated the costs of the improvement at not to exceed $2 an acre.     Some time in February, 1921, plaintiff called on defendant at his office in Minneapolis. ' What took place at this conference is in direct conflict.     Plaintiff on direct-examination testified as follows:

"At that time I had a small map of the district and the course of the ditch shown upon the map, which I showed to Mr. Jordan.     We had the acreage figured out and the approximate cost of the ditch, making it cost $1.70 per acre, he got out some plats, checked up on his lands, and told me that I need not bother with him any more; that he was willing to put up his $1.70, or $2,550 when the ditch was constructed or continued from the site of the dredge to the mouth of the Taquamenon."

On cross-examination he said:

"He told me that if the ditch was constructed at the $1.70 an acre, the price I submitted to him, that he was willing to put his $2,500 up at that time; and that I needn't bother him any more.     That was all he said. I didn't see Mr. Jordan again after that meeting.     I base my claim upon that conversation in February, 1921."

Plaintiff is corroborated by disinterested testimony as to what took place at this conference.     The defendant denies that such talk took place.     It is his claim that nothing definite was agreed upon, that he insisted on having a report of an engineer before he took any steps, and that he agreed to meet other interested parties and go over the matter after such report was had.     He denies that he then or at any time agreed to pay $1.70 or any other sum per acre for the improvement.     Plaintiff saw the other interested parties; with some he entered into written con-

tracts, with others oral ones.    He sent defendant a written contract and no doubt preferred written evidence as to what the contract with him was.    It is undisputed that plaintiff completed the improvement at a cost to himself of about $12,000.    ,The case presented a question for the jury and a directed verdict would not have been justified.    While it may be said that under the circumstances defendant's promise was based on a contingency, *i. e.*, that the others would go into the scheme, still if the conversation took place as testified to by plaintiff, defendant made him an offer, a continuing one, one not withdrawn, which plaintiff accepted when he completed the arrangement with the others and commenced and completed the work.    The jury upon the disputed evidence found for the plaintiff.    The questions were for them and not for the court. '

The trial judge properly excluded letters passing between defendant and the State Bank of Chicago. They were not a part of the *res gestæ*.    Defendant's letter was self-serving and that of the bank hearsay.

The judgment will be affirmed.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.